```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF TENNESSEE
                           AT CHATTANOOGA
```

ROADTEC, INC,                    )
                                 )
            Plaintiff,           )
                                 )           1:10-cv-338
v.                               )           *Collier / Lee*
                                 )
ROAD SCIENCE, LLC,               )
                                 )
            Defendant.           )

## ORDER

Before the Court is Plaintiff's motion to compel responses to certain interrogatories and requests for production of documents [Doc. 32]. For the reasons below, the Court will **GRANT IN PART** and **DENY IN PART** the motion to compel.

**I.     BACKGROUND**

Plaintiff is a manufacturer of "spray pavers," machines which allow paving contractors to quickly apply two-layer asphalt pavement surfaces. Defendant is a company that develops, patents, and licenses paving technologies, including methods for applying two-layer asphalt surfaces. Briefly, Plaintiff alleges that Defendant has been telling Plaintiff's customers that the use of Plaintiff's spray pavers without a license from Defendant infringes on one of Defendant's patents, "the '941 Patent," causing economic harm to Plaintiff's business.

Plaintiff seeks a declaratory judgment that the '941 Patent is invalid[1] along with damages for economic loss. Defendant has filed motions to dismiss Plaintiff's claims, and one of those

---

[1] Plaintiff alleges that the '941 Patent is invalid because the methods described in it were a part of the "prior art" existing at the time it was applied for, in April 2008. Plaintiff alleges that, since 2005 when it began making the spray pavers, it instructed its customers in methods of using the pavers that arguably fall within the '941 Patent.

motions implicates the Court's subject matter jurisdiction. Specifically, Defendant argues that there is not a sufficiently immediate case or controversy to support the exercise of jurisdiction over the declaratory judgment action. To resolve that issue as a threshold matter, the parties requested, and the Court ordered, jurisdictional discovery. The deadline for the conclusion of jurisdictional discovery is May 31, 2011, and the Court has reserved June 20, 2011, for an evidentiary hearing on the jurisdictional issue.[2] Accordingly, Defendant's motion to dismiss for want of subject matter jurisdiction will test not only the legal sufficiency of Plaintiff's jurisdictional allegations, but also the factual accuracy of those allegations.

### A. The Patent(s) at Issue

#### 1. The '941 Patent

The '941 Patent, which granted the so-called '821 Application,[3] is entitled "Rut Resistant Coating and Method of Applying Rut Resistant Coating." The patented method is designed to apply a new surface to existing pavement in such a way as to prevent rutting and to prevent the old cracks from reappearing in the new pavement [Doc. 8-4]. It is a two-layer process: (1) a "binding material layer" which bonds to the old pavement and creates a moisture barrier, and (2) an "aggregate mixture layer," which makes the road surface. Defendant markets the '941 Patent to paving contractors by means of a licensing agreement known as the "BondTekk" license [Doc. 8-6].

Defendant attempts to trivialize the economic impact of its licensing program on Plaintiff's business. According to Defendant, the methods described in the '941 Patent can be accomplished

---

[2] The parties have now filed a joint motion to adjust this schedule by 30 days, but the motion has not yet been ruled on.

[3] For the purposes of this Order, each reference to the '941 Patent includes the '821 Application, to the extent applicable.

with a spray paver, but spray pavers can also be used for other purposes. In other words, Plaintiff's customers can buy spray pavers and use them in ways that do not infringe on the '941 Patent with no need to purchase a license from Defendant.[4] Contractors who have entered into the licensing agreement with Defendant, however, are required to use the "spray" function of their spray pavers *exclusively* for Defendant's licensed methods.[5] Furthermore, Defendant argues that the '941 Patent's description does even not mention "spray pavers," and therefore the '941 Patent does not require the use of a spray paver. To the contrary, however, it appears that the '941 Patent's methods cannot be accomplished without a spray paver, or at the very least, those methods have not yet been accomplished with any other equipment.[6]

### 2. The '578 Patent

The '578 Patent, which is also owned by Defendant but is now expired, described a similar method of paving called the NovaChip process. Plaintiff alleges that Defendant marketed its licenses to Plaintiff's customers, defining Plaintiff's spray pavers as "NovaChip Equipment" used to install "NovaChip Pavement." Defendant allegedly now markets the expired '578 Patent *and* the '941 Patent as BondTekk technologies, with one licensing fee for both methods.

### B. Plaintiff's Allegations

Plaintiff alleges, and Defendant does not dispute, that Defendant has sent a letter ("the

---

[4] Such uses include, for example, traditional paving techniques without the use of the "spray bar" or spray paving methods described in the now-expired '578 Patent (described below).

[5] The spray pavers may still be used, however, as traditional "hot-mix" pavers without incurring any licensing fees.

[6] Defendant represented at the hearing that it was not aware of any other means of performing the '941 Patent's methods. In addition, the method described in the '941 patent requires the aggregate layer to be applied within between 5 and 30 seconds of the binding layer, suggesting that a spray paver would indeed be required for the process.

September 2010 letter") to at least some of Plaintiff's customers providing "information" about Defendant's interest in the '941 Patent and "tak[ing] the opportunity in this letter to impress upon you our firm resolve to uphold our intellectual property rights . . . ." Plaintiff alleges that Defendant has used "intimidation tactics" and threatened legal action against Plaintiff's customers to convince them to enter into licensing agreements. Plaintiff alleges that "as a direct result of [Defendant's] activities . . . , [Plaintiff] believes it has lost spray paver sales."

### C. Declaratory Judgments Jurisdiction in Patent Disputes

While the merits of the jurisdictional issue are not before the Court at this time, some background in the applicable law is necessary to frame the discovery issues. A court cannot exercise jurisdiction over a declaratory judgment action, or any action for that matter, if there is not a live "case or controversy" between the parties. *MedImmune Inc. v. Genetech, Inc.*, 549 U.S. 118, 126 (2007). In the context of a patent dispute, a declaratory judgment plaintiff must ask for more than an advisory opinion based on hypothetical facts; it must show that there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy to warrant the issuance of a declaratory judgment." *Id.* at 127. Whether a dispute is sufficiently immediate to invoke the court's jurisdiction is measured by "all the circumstances." *Id.* Defendant concedes that its "prior litigation history" is a relevant factor under this test.

Under *MedImmune*, a putative infringer need not reasonably expect an "imminent" infringement suit in order to sue for declaratory judgment. *Id.* at 132 n.11. Nor must there be "an overt, specific act toward the declaratory judgment plaintiff" by the patent holder in order to demonstrate the existence of an actual controversy. *Assoc. for Molecular Pathology*, 669 F. Supp. 2d 365 (S.D.N.Y. 2009) (holding that such a requirement would be inconsistent with *MedImmune*'s

4

"all the circumstances" analysis). While the absence of any "affirmative acts" indicating that the patent holder intends to take legal action against a putative infringer is a "significant hurdle" to establishing jurisdiction, it is not necessarily fatal. *Edmunds Holding Co.*, 598 F. Supp. 2d 606, 610 (D. Del. 2009). Still, the declaratory judgment plaintiff must show, at least, that the patent holder *believed* that the plaintiff's acts were infringing. *Id.*

Here, Plaintiff's allegations of harm rest primarily on Defendant's alleged threats of enforcement against Plaintiff's third-party customers. The Federal Circuit recently held that economic injury caused by a patent holder's infringement threats against third parties is not, *by itself*, sufficient to create a case or controversy. *Arris Group, Inc. v. British Telecomms. PLC*, —F.3d—, 2011 WL 1899112, *4 (Fed. Cir. 2011). Instead, the declaratory judgment plaintiff must show that the parties' "adverse *legal* interests" are sufficiently immediate to warrant jurisdiction. *Id.* To that end, the plaintiff must show either (1) that it may be obligated to indemnify its customers if they are found liable for infringement[7] or (2) that it may be liable for contributory infringement based on its customers' direct infringement. *Id.* The court held that "when the holder of a patent with method claims accuses the supplier's customers of direct infringement based on their use of the supplier's products in the performance of the claimed method, an implicit assertion of indirect infringement may arise." *Id.* at *5. No "express accusation" of infringement against the plaintiff is necessary. *Id.* at *7. To determine whether the specter of an indirect infringement suit supported jurisdiction in *Arris*, the court considered as a factor whether and to what extent the patent holder

---

[7] The court reserved the question of whether a potential indemnity obligation must be rooted in an express agreement or could be derived from the application of the provision of the Uniform Commercial Code providing that "a customer without an indemnity contract may nonetheless seek indemnification from a seller if sued for infringement based on its use of the seller's products." *Id.*

referred to the declaratory judgment plaintiff's products in communications to its customers. *Id.* at *6.

## II. ANALYSIS

### A. Standards Governing Discoverability

The preliminary scheduling order in this case provides that the parties may conduct "jurisdictional discovery" only. Subject to that limitation, the parties may therefore obtain discovery "regarding any nonprivileged matter that is relevant to" either party's jurisdictional arguments. Fed. R. Civ. P. 26(b)(1). "Relevant information" under this standard "need not be admissible at the trial"; rather, the requests must only be "reasonably calculated to lead to the discovery of admissible evidence. *Id.* Where the relevance of a discovery request is challenged, the proponent of the request (here, Plaintiff) bears the burden to show its relevance. *Grant, Konvalinka & Harrison, P.C. v. United States*, No. 1:07-CV-88, 2008 WL 4865566, *4 (E.D. Tenn. Nov. 10, 2008).

### B. Defendant's Broad Objections to the Discovery

The parties have argued their positions amply and ably, and the Court will not repeat the arguments here. Defendant's arguments fall into several broad categories, with more specific objections to several requests. The Court therefore follows the same convention, applying the standards explained above to Defendant's objections, both in principle and in particular. Based on those standards, and having considered the parties' submissions and arguments, the Court makes the following findings:

1. To the extent Defendant objects to the discovery on the basis that events occurring after the complaint was filed are not relevant to jurisdiction, the Court **FINDS** that although a jurisdictional defect cannot be cured by subsequent events, later-occurring events may be relevant to whether jurisdiction existed at the time of filing. The Court therefore concludes that objections to post-complaint discovery must be considered on a request-by-

request basis.

2. To the extent Defendant broadly objects to the discovery on the basis that it seeks communications made to paving *contractors* as opposed to paving equipment *manufacturers*, the Court **FINDS** that on the facts of this case, Defendant's objection is not well taken. Communications to third parties may indeed be relevant under the facts of this case, where Plaintiff's jurisdictional allegations describe Defendant's conduct with respect to third parties, such as paving contractors and DOT representatives. *See Arris*, 2011 WL 1899112, at *6-7. Defendant's motion to dismiss may test the legal sufficiency of these allegations, but to the extent the discovery is designed to shore up those allegations, the discovery is relevant to the jurisdictional inquiry.

3. To the extent Defendant objects to discovery of its communications on the basis that it has engaged in no "affirmative acts" to enforce its claimed intellectual property rights, the Court **FINDS** that Defendant's argument invokes one of the very questions that the Court has ordered discovery to answer. The objection is not well taken.

4. To the extent Defendant objects to the discovery because its attempts to commercialize its intellectual property are insufficient to invoke the Court's jurisdiction, the Court **FINDS** that the objection is not well taken. The objection, which characterizes Defendant's communications to third-party customers as innocuous rather than threatening, goes to the merits of the jurisdictional issue, not to the scope of discovery.

5. To the extent Defendant objects to the discovery because it seeks information related to Defendant's enforcement activities with respect to the '578 Patent, the Court **FINDS** the objection is not well taken. Both the '578 Patent and the '941 Patent describe similar methods, which Defendant has marketed to paving contractors under the same licensing agreement. The Court **FINDS** that Defendant's enforcement activities with respect to the '578 Patent, if any, are relevant to determine whether this dispute is of sufficient immediacy to invoke the Court's jurisdiction. See *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (noting that a patent holder's prior enforcement activities may be relevant in the totality of the circumstances).

6. To the extent Defendant objects to the discovery on the basis that its internal communications cannot constitute "affirmative acts" of enforcement, the Court **FINDS** that Defendant's belief that certain conduct infringes on its rights under the '578 and '941 Patents, along with Defendant's plans to enforce those rights, whether or not made public, are relevant to the

jurisdictional inquiry. Such internal communications may not be sufficient by themselves to show the existence of a case or controversy, but they are relevant to the totality of the circumstances. *See Edmunds Holding Co. v. Autobytel, Inc.*, 598 F. Supp. 2d 606, 610 (D. Del. 2009).

7. To the extent Defendant objects to the discovery because it defines Defendant Road Science to include SemMaterials, an unrelated and now-defunct entity, the Court **FINDS** the objection is well taken. The Court **REFORMS** the definition of Road Science in Plaintiff's Interrogatories and Requests for Production by deleting the reference to SemMaterials.

8. Similarly, to the extent that Defendant objects to the discovery because it seeks information about Defendant's knowledge regarding enforcement activities undertaken by SemMaterials, the Court **FINDS** that Defendant's knowledge of that other entity's activities, even though Defendant employs some of the entity's former personnel and has acquired some of its intellectual property, is not relevant to the existence of an actual case or controversy between Plaintiff and Defendant.

These findings dispose of many of the issues raised in the parties' filings. Accordingly, Plaintiff's motion to compel is **GRANTED** with respect to Interrogatories 1, 2, 5, and 9 and Requests for Production 1, 4, 5, 6, 7, 10, 11, 12, and 18. Plaintiff's motion is also **GRANTED** with respect to Requests for Production 13, 14, and 15, as limited by the language included in Plaintiff's brief. Plaintiff's motion is **DENIED** with respect to Interrogatory 7.

**C.** **Remaining Discovery Requests**

With respect to the remaining discovery requests, the Court finds as follows:

9. The Court **FINDS** Interrogatories 3 and 4 and Requests for Production 8 and 9 to be overbroad, even as limited by the language included in Plaintiff's brief. With respect to those requests, therefore, the Court **GRANTS** the motion to compel **IN PART**: Defendant shall answer Interrogatories 3 and 4 and produce documents responsive to Requests for Production 8 and 9, but only with respect to Defendant's communications with DOT representatives and contractors relating to the '941 Patent as a proprietary process involving a license *and* making reference to Plaintiff or products manufactured by Plaintiff.

10. Similarly, the Court **FINDS** Request for Production 20 to be overbroad

8

because it is not limited by subject matter. The Court **GRANTS** the motion to compel a response to Request for Production 20 **IN PART** as follows: Defendant shall produce responsive documents to the extent that they relate to the '578 Patent or the '941 Patent, to Plaintiff, or to Plaintiff's products.

11. With respect to Request for Production 22, Defendant has represented that it is unaware of any documented infringement and did not suspect any infringement at the time the complaint was filed. The Court **FINDS** that discovery directed to Defendant's later-formed suspicions of infringement, if any, is reasonably calculated to lead to evidence regarding whether jurisdiction existed at the time the complaint was filed. Accordingly, Plaintiff's motion to compel is **GRANTED** with respect to Request for Production 22.

12. The Court **FINDS** Request for Production 25 to be overbroad. Defendant represents that Plaintiff offered to limit the request to documents relating to paving projects using a method claimed in the '941 patent "by an entity not licensed under the '821 Application and the '941 Patent." So limited, the Court **FINDS** the request to be relevant to the jurisdictional issue. The request appears to be aimed at discovering whether Defendant has monitored paving projects for potential infringements. Defendant's strategy for enforcing its patent rights is relevant to the jurisdictional question.

13. Finally, the Court **FINDS** that Request for Production 23 is irrelevant to the jurisdictional issue. Whether Plaintiff's products have been or can be used to perform the process claimed in Defendant's patent has no bearing on whether there is a live case or controversy here, and moreover, is not even in dispute. Plaintiff's motion is therefore **DENIED** with respect to Request for Production 23.

SO ORDERED.

ENTER:

                                                                      *s/ Susan K. Lee*
                                                                      SUSAN K. LEE
                                                                      UNITED STATES MAGISTRATE JUDGE